(No. 71868

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. SHASTER SMITH, Appellee.

*Opinion filed May 21, 1992.*

Roland W. Burris, Attorney General, of Springfield, and Michael J. Waller, State's Attorney, of Waukegan (Kenneth R. Boyle and William L. Browers, of the Office

of the State's Attorneys Appellate Prosecutor, of Elgin, of counsel), for the People.

G. Joseph Weller, Deputy Defender, and Steven E. Wiltgen, Assistant Defender, of the Office of the State Appellate Defender, of Elgin, for appellee.

JUSTICE CLARK delivered the opinion of the court:

Following a bench trial in the circuit court of Lake County, defendant, Shaster Smith, was convicted of armed robbery (Ill. Rev. Stat. 1987, ch. 38, par. 18—2) of a cab driver, attempted armed robbery (Ill. Rev. Stat. 1987, ch. 38, par. 8—4) of a jewelry store, unlawful use of weapons by a felon (Ill. Rev. Stat. 1987, ch. 38, par. 24—1.1), and aggravated assault (Ill. Rev. Stat. 1987, ch. 38, par. 12—2). Defendant was sentenced to concurrent terms of 21 years, 15 years, 5 years and 1 year, respectively, for the above convictions. Defendant appealed to the appellate court challenging only his convictions for attempted armed robbery and unlawful use of weapons by a felon, contending that the evidence was insufficient to prove the charges. The appellate court reversed both convictions. (209 Ill. App. 3d 795.) We granted the State's petition for leave to appeal (134 Ill. 2d R. 315).

The facts in this case are not in dispute. On July 18, 1988, defendant purchased a one-way train ticket from Chicago to Waukegan. At approximately 12:30 p.m., at the Highland Park Metra train station, defendant disembarked from the train and entered a taxi cab driven by Roman Suminski. At defendant's request, Suminski drove to Waukegan, specifically to Genesee Street where defendant said he was looking for a jewelry store. At one point, Suminski spotted a jewelry store and pointed it out to defendant, but defendant

told him that was a "Mexican" store and "not the one." Suminski noticed a police car and asked defendant if they should ask for directions to the jewelry store, but defendant declined. Defendant then instructed Suminski to drive him to the Waukegan Metra train station, and upon their arrival defendant drew a gun and stated, "I don't want to kill you, just give me your money and get out of the car." Defendant drove off in the cab, and Suminski called the police to report the robbery of the cab, his money and other personal belongings.

A short time later, police located the stolen cab about 1½ miles from the Metra train station. While surveying the area, the police saw defendant walking. When defendant saw the police, he started running and dropped his gun, some money, and a blue pillowcase. Subsequently, the police found defendant hidden in a nearby trailer.

After being arrested, defendant consented to an interview at the Waukegan police station. According to Detective Fernando Shipley, who testified at trial, defendant admitted that he intended to rob an unidentified jewelry store on Genesee Street and to use the stolen cab as a getaway vehicle. Shipley testified that defendant also stated that although he did not know the name of the jewelry store, he knew what the building looked like.

After Shipley's testimony, the State filed a certified statement of conviction from the circuit court of Cook County indicating that on November 1, 1983, "Shaster Smith" pled guilty to and was sentenced on the charge of burglary. The State proffered this conviction for the purpose of proving defendant's unlawful use of weapons by a felon charge. Thereafter, the State rested, and defense counsel moved for a directed verdict. The trial court denied defendant's motion for directed ver-

dict, and defendant rested without presenting any evidence. The trial court thereafter found defendant guilty on all four charges.

As noted earlier, the appellate court reversed defendant's convictions for attempted armed robbery and unlawful use of weapons by a felon holding that, on both counts, the evidence was legally insufficient. The State appeals both conclusions as being incorrect. We will first address defendant's conviction for attempted armed robbery.

Section 8—4(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 8—4(a)) provides:

"A person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes *a substantial step* toward the commission of that offense." (Emphasis added.)

Section 18—2(a) of the Criminal Code (Ill. Rev. Stat. 1987, ch. 38, par. 18—2(a)) provides:

"A person commits armed robbery when he or she [takes property from the person or presence of another by the use of force or by threatening the imminent use of force] while he or she carries on or about his or her person, or is otherwise armed with a dangerous weapon."

As is apparent from the above-cited statutes, to convict defendant of attempted armed robbery, the State had to establish beyond a reasonable doubt both that (1) defendant *intended* to commit the offense, and (2) defendant took a *substantial step* toward the commission of the offense. Defendant concedes that he intended to rob a jewelry store, but maintains that his actions were insufficient to constitute a substantial step towards that end. The State argues that, based on *People v. Terrell* (1984), 99 Ill. 2d 427, defendant's actions constituted a substantial step and, thus, his

conviction for attempted armed robbery should be affirmed.

Initially we note, as the court did in *Terrell*, that determining " 'when preparation to commit an offense ceases and perpetration of the offense begins' " is " 'one of the most troublesome problems' " in the area of inchoate offenses. (*Terrell*, 99 Ill. 2d at 433, quoting Ill. Ann. Stat., ch. 38, par. 8—4(a), Committee Comments, at 498-99 (Smith-Hurd 1987).) Moreover, whereas it is not necessary that a defendant complete the last proximate act in order to be convicted of attempt, mere preparation is not a substantial step. (*Terrell*, 99 Ill. 2d at 433 (citing *People v. Elmore* (1971), 50 Ill. 2d 10, 12, and *People v. Woods* (1962), 24 Ill. 2d 154, 158).) Precisely what is a substantial step must be determined by evaluating the facts and circumstances of each particular case. *Terrell*, 99 Ill. 2d at 433, citing *People v. Wallace* (1974), 57 Ill. 2d 285, 292.

In *Terrell*, the police observed the defendant hiding in weeds approximately 20 to 30 feet behind a service station, carrying a revolver and a black nylon stocking with a knot at the end. The service station was near two other buildings, a construction company and a tool company. After the defendant and an accomplice were apprehended, the defendant claimed that he was going to the service station to buy cigarettes, but he had no money on his person. Citing with approval two appellate court cases, specifically *People v. Burleson* (1977), 50 Ill. App. 3d 629, and *People v. Reyes* (1981), 102 Ill. App. 3d 820, this court affirmed the defendant's conviction for attempted armed robbery of the service station, stating:

> "Like the defendants in *Burleson* and *Reyes*, the defendant, in the case at bar, was in possession of the materials necessary to carry out an armed robbery and was near the place contemplated for its commission. He

was armed with a loaded revolver, a disguise and the assistance of an accomplice, whose presence and identical disguise indicated a prearranged plan. He was lying in wait, only 25 to 30 feet from his target, with gun in hand. It was only the arrival of the police which caused him to abandon his plan." *Terrell*, 99 Ill. 2d at 435.

In addition, this court stated that "[t]he defendant *** did not yet have his mask on nor had he arrived at the station's front door. It would be unreasonable to believe, however, that the defendant's actions did not place him in ' "dangerous proximity to success." ' " *Terrell*, 99 Ill. 2d at 434 (quoting *People v. Paluch* (1966), 78 Ill. App. 2d 356, 360, quoting *Hyde v. United States* (1912), 225 U.S. 347, 388, 56 L. Ed. 1114, 1134, 32 S. Ct. 793, 810 (Holmes, J., dissenting)).

In *Burleson*, the defendant and an accomplice approached a bank while "in possession of a shotgun, suitcase and disguises which were in place." (*Burleson*, 50 Ill. App. 3d at 633.) Only the quick action of a man inside the bank, who bolted the front door as the defendant and his accomplice approached, prevented the completion of the armed robbery. Consequently, the appellate court held that although the defendant and the accomplice did not enter the bank building, their acts were "sufficient to constitute a 'substantial step' toward the commission of an armed robbery in the bank." *Burleson*, 50 Ill. App. 3d at 633.

In *Reyes*, the defendant and a codefendant while in possession of a rifle approached but did not enter a drugstore. The intended victims were inside the store and, according to the defendant, the plan was to rob the victims as they exited the drugstore. When several patrons exited the drugstore, the defendant and codefendant began to run while, at the same time, the codefendant fired his rifle. The defendant and codefend-

ant were convicted of attempted armed robbery. On appeal, the defendant argued that he could not be found guilty of attempt because he never entered the drugstore. The appellate court disagreed with the defendant, noting that by defendant's own admission, his plan "did not contemplate entry into that store." (*Reyes*, 102 Ill. App. 3d at 835.) Further, relying on *Burleson*, the appellate court stated that "if the intended victim of an armed robbery is inside of a building, entry into that building is not required for a finding of attempt armed robbery. \*\*\* *Burleson* stands for the principle that *a substantial step has been taken when an actor possesses the materials necessary to carry out the crime, at or near the place contemplated for its commission.*" (Emphasis added.) *Reyes*, 102 Ill. App. 3d at 835 (cited in *Terrell*, 99 Ill. 2d at 435).

In addition to *Burleson* and *Reyes*, this court in *Terrell* found support for its holding in the Model Penal Code, which sets forth a list of acts which may be considered to be a substantial step, when "strongly corroborative of the actor's criminal purpose." (Model Penal Code §5.01(2) (1985).) Although this court in *Terrell* did not specifically explain which acts from the following list indicated that the defendant took a substantial step, it did quote these acts from the list:

" '(a) lying in wait, searching for or following the contemplated victim of the crime;

(b) \*\*\*

(c) reconnoitering the place contemplated for the commission of the crime;

(d) \*\*\*

(e) possession of materials to be employed in the commission of the crime, which are specially designed for such unlawful use or which can serve no lawful purpose of the actor under the circumstances;

(f) possession, collection or fabrication of materials to be employed in the commission of the crime, at

or near the place contemplated for its commission, where such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances;

(g) ***.' " *Terrell*, 99 Ill. 2d at 435-36, quoting Model Penal Code §5.01(2) (Proposed Official Draft 1962).

Turning to the the case at bar, we must determine whether "defendant, by arming himself, traveling to Waukegan, searching for the jewelry store, and driving a stolen cab that he intended to use as a getaway car" committed a substantial step. (209 Ill. App. 3d at 799.) We find that defendant's actions did not constitute the statutorily required substantial step, and thus his conviction for attempted armed robbery must be reversed. In so holding, we emphasize comments made by our appellate court in this matter which distinguished the aforementioned *Terrell*, *Burleson* and *Reyes* cases:

> "[I]n each of those cases, the defendant had already found his target and either was waiting close by, intending to pounce momentarily, or had already started toward the building. In each case, the defendant's physical proximity to an identified, settled target enabled the fact finder to conclude beyond a reasonable doubt that the defendant had gone beyond preparation and achieved dangerous proximity to success." 209 Ill. App. 3d at 800.

The accused in *Terrell* was only 25 to 30 feet from his intended target—the service station; the accused in *Burleson* approached the door to their intended target—the bank; the accused in *Reyes* approached the drugstore which contained their potential victims. Clearly, these perpetrators " 'possesse[d] the materials necessary to carry out the crime, at or near the place contemplated for its commission.' " See *Terrell*, 99 Ill. 2d at 435, quoting *Burleson*, 102 Ill. App. 3d at 835.

In this case, as defendant notes, there is no evidence as to the location of the jewelry store, even

though defendant did drive along the street where he expected to find it. Nor is there any evidence on how close defendant came to the jewelry store, or the name of the jewelry store. In essence, the State is charging defendant with attempted armed robbery of an unnamed, undetermined jewelry store. Although the police maintained that defendant had told them that he "knew what the building looked like," there is no evidence that defendant ever identified the building. Presumably he did not. Moreover, besides the "Mexican" jewelry store previously mentioned, there is no evidence in the record of a jewelry store on Genesee Street. Thus, we believe that it would be improper to conclude that defendant came "within a dangerous proximity to success." See *Terrell*, 99 Ill. 2d at 434; see also Ill. Ann. Stat., ch. 38, par. 8—4, Committee Comments, at 499 (Smith-Hurd 1989) ("[T]here must be an act, and the act must not be too far removed in time and space from the conduct which constitutes the principal offense").

The State maintains that the Model Penal Code factors quoted in *Terrell*, which may be considered to be a substantial step, demonstrate that defendant committed attempted armed robbery. We disagree. Initially, we note that these factors apply only if "strongly corroborative of the actor's criminal purpose." (Model Penal Code §5.01(2) (1985).) Such strong corroboration is absent in this case. First, although defendant was "searching for" the jewelry store, "the contemplated victim of the crime" was never identified. (See Model Penal Code §5.01(2)(a) (1985).) The appellate court stated "defendant, as well as the State, was unable to give the name, address or description of the store that was 'the contemplated victim.'" (209 Ill. App. 3d at 801.) Consequently, this lack of information contradicts the existence of a specific "contemplated victim" as re-

quired by the Model Penal Code. Second, it would be incorrect to hold that defendant was "reconnoitering the place contemplated for the commission of the crime" (see Model Penal Code §5.01(2)(c) (1985)), given that the place contemplated for the commission of the crime, *i.e.*, the jewelry store, has yet to be identified, either by name, location, or physical description. We believe that "reconnoitering" presumes that the place to be reconnoitered has already been located and identified.

Third, the materials found on defendant, the gun and pillowcase, are not "materials *** which are *specifically designed*" for the unlawful purpose of robbing a jewelry store. (Emphasis added.) (Model Penal Code §5.01(2)(e) (1985); see also W. LaFave & A. Scott, Substantive Criminal Law §6.2, at 38 (1986) (stating that a still and mash are specifically designed materials for an attempt to illegally manufacture intoxicating beverages).) Finally, since the jewelry store has yet to be named or located, defendant did not "possess[ ] *** materials to be employed in the commission of the crime, *at or near the place contemplated for its commission.*" (Emphasis added.) Model Penal Code §5.01(2)(f) (1985).

For the reasons stated above, we agree with the appellate court that defendant's conviction for attempted armed robbery must be reversed.

Regarding defendant's conviction for unlawful use of weapons by a felon, the appellate court held that the evidence was legally insufficient to convict defendant of this charge. (209 Ill. App. 3d at 802.) We now reverse that decision. To sustain a conviction for unlawful use of weapons by a felon, the State must prove beyond a reasonable doubt both that (1) defendant committed the crime of unlawful use of weapons, and (2) that defendant has been convicted of a felony. (Ill.

Rev. Stat. 1989, ch. 38, par. 24—1.1; see *People v. Palmer* (1984), 104 Ill. 2d 340.) Clearly, proof of defendant's prior felony conviction is an essential element of the crime charged. As noted earlier, at defendant's trial, the State introduced into evidence a certified copy of conviction from the circuit court of Cook County indicating that on November 1, 1983, "Shaster Smith" pled guilty to burglary and was sentenced to a term of three years' imprisonment. Defendant argues that this certified statement of conviction is insufficient to prove that the "Shaster Smith" named in the document is the same Shaster Smith on trial here. We disagree. In *People v. Davis* (1983), 95 Ill. 2d 1, 31, this court adopted a general rule that "identity of name gives rise to a rebuttable presumption of identity of person." Since defendant does not argue that he is not the same "Shaster Smith" named in the certified copy of conviction, we fail to see how defendant was prejudiced. Thus, the State met its burden of proof regarding this element of the charge of unlawful use of weapons by a felon.

For the reasons stated above, we affirm the appellate court as to its reversal of defendant's conviction for attempted armed robbery and reverse the appellate court as to its reversal of his conviction for unlawful use of weapons by a felon. The judgment of the circuit court is affirmed in part and reversed in part.

> *Appellate court affirmed in part*
> *and reversed in part;*
> *circuit court affirmed in part*
> *and reversed in part.*